```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| KEVIN CAMPFIELD, | HONORABLE JEROME B. SIMANDLE |
| Petitioner, | |
| v. | Civil Action<br>No. 13-2561 (JBS) |
| JOHN CUNNINGHAM,<br>et al., | **OPINION** |
| Respondents. | |

APPEARANCES:

Kevin Campfield, Petitioner pro se 444378-D
South Woods State Prison
215 Burlington Road South Bridgeton, New Jersey 08302

Courtney M. Cittadini, Assistant County Prosecutor
Atlantic County Prosecutor's Office
4997 Unami Boulevard
Mays Landing, New Jersey 08330

    Attorney for Respondent John Cunningham

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

    Kevin Campfield, a state prisoner confined at South Woods State Prison, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petition, Docket Entry 1. Respondent John Cunningham opposes the petition on the grounds that Petitioner has failed to exhaust the available remedies in state court. Answer, Docket Entry 9. For the reasons stated

herein, the petition shall be denied and no certificate of appealability shall issue.

## II. BACKGROUND

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, 28 U.S.C. § 2254(e)(1), reproduces the recitation of the facts as set forth by the Supreme Court of New Jersey in its opinion on direct appeal:

> On the night of January 17, 2006, Officer Brandon Stocks of the Pleasantville, New Jersey Police Department initiated an investigation of a report that [Ivory] Bennett, a twenty-five-year-old resident of Pleasantville, was missing. Bennett's mother told police that she was alarmed because the previous evening her son had not followed his usual practice of contacting her when he planned to stay out overnight. She had also heard gunshots near her apartment building at approximately 1:00 a.m. Police learned from another relative of Bennett that the relative had seen Bennett and defendant at a convenience store that evening. Another witness recalled that, while drinking gin with some other men that night, Bennett and defendant had argued, and that he last saw Bennett running toward the apartment that he shared with his mother, pursued by defendant.
>
> The following day, police officers found bloody clothing on a path behind Bennett's apartment complex. A day later, police searched a wooded area behind the complex that was covered by brush so thick that they needed heavy equipment to gain access to the area. In that search, officers found Bennett's body, face down in a creek. Despite the midwinter cold, Bennett was wearing only a t-shirt, two undershirts, boxer shorts and one sock. An autopsy revealed multiple blunt force injuries to Bennett's head, including scalp contusions and lacerations, but the cause of death was asphyxiation due to drowning.

>Defendant met with police officers on January 20, 2006. Informed of the discovery of Bennett's body, defendant responded, "listen, I didn't kill him, all I did was I had a fight with him." The officers instructed defendant not to say anything further and administered warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).
>
>Defendant later waived his *Miranda* rights and agreed to give a taped statement under oath. He admitted that on the night of January 17, 2006, he and Bennett began to argue while drinking gin with two other men near Bennett's apartment complex. According to defendant, all four men were intoxicated. He told police that after the two other men left, he followed Bennett as he attempted to return to his mother's home. Apparently alarmed at defendant's pursuit, Bennett slipped on a stairwell and fell over the side railing, hitting his head on the cement sidewalk below.
>
>Defendant told police that he found Bennett unconscious and bleeding from a wound to the head. He admitted that he emptied Bennett's pockets of a small amount of cash, and dragged Bennett ten to fifteen yards. Defendant admitted that when Bennett awoke, defendant punched him four or five times "pretty hard" in the face. According to defendant's statement, when Bennett attempted to resist, defendant brandished a handgun, pushed Bennett back on the ground and forced him at gunpoint to remove most of his clothing. Defendant recalled that despite his head injuries and intoxicated state, Bennett fled, running into the dense woods behind the apartment complex. Defendant said that he attempted to chase Bennett, but was deterred from further pursuit by thick brush. He told police that he fired two gunshots in an attempt to stop Bennett from fleeing, discarded Bennett's clothing and his own blood-covered jeans, and threw his gun into the woods.

*State v. Campfield*, 61 A.3d 1258, 1261-62 (N.J. 2013); Re 14 at 6-8.[1]

---

[1] Re refers to the exhibits to Respondent's Answer, Docket Entry 9.

An Atlantic County Grand Jury indicted Petitioner for first-degree felony murder, N.J. STAT. ANN. § 2C:11-3(a)(3) (Count One); second-degree robbery, N.J. STAT. ANN. § 2C:15-1 (Count Two); first-degree robbery, N.J. STAT. ANN. § 2C:15-1 (Count Three); first-degree aggravated manslaughter, N.J. STAT. ANN. § 2C:11-4(a) (Count Four); second-degree reckless manslaughter, N.J. STAT. ANN. § 2C:11-4(b) (Count Five); second-degree aggravated assault, N.J. STAT. ANN. § 2C:12-1(b)(1) (Count Six); third-degree aggravated assault, N.J. STAT. ANN. § 2C:12-1(b)(2) (Count Seven); fourth-degree aggravated assault, N.J. STAT. ANN. § 2C:12-1(b)(4) (Count Eight); second-degree possession of a weapon for an unlawful purpose, N.J. STAT. ANN. § 2C:39-4(a), (Count Nine); fourth-degree unlawful possession of a weapon, N.J. STAT. ANN. § 2C:39-5(b) (Count Ten), and; fourth-degree tampering with physical evidence, N.J. STAT. ANN. § 2C:28-6(1), (Count Eleven). Indictment, Re 1. After an unsuccessful motion to suppress his statements to police, Petitioner entered into a plea agreement with the State.

The plea agreement contemplated that Petitioner would plead guilty to Counts Two and Five, and the State would agree to dismiss the remaining charges. Additionally, the State would recommend a sentence of eight years on the manslaughter charge and a consecutive seven years on the robbery charge, both subject to New Jersey's No Early Release Act. Transcript of

Plea, Re 2 at 3:12-18.[2] The trial court engaged in a colloquy with Petitioner regarding the rights he was giving up as a result of pleading guilty as well as the possible sentencing exposure. *Id.* at 4:14 to 8:23. The court also confirmed Petitioner had reviewed the plea forms with his attorney and understood all of the information contained therein. *Id.* at 8:24 to 9:11.

After Petitioner affirmed he had understood the forms and had no further questions for the court or his attorney, he proceeded to answer his attorney's questions in order to establish a factual basis for the plea. *Id.* at 9:16 to 12:6. After two follow-up questions from the State, the trial court found that Petitioner had knowingly, intelligently, and voluntarily waived his trial rights and that he was guilty of second-degree manslaughter and robbery. *Id.* at 12:10-23. The court thereafter accepted the guilty plea. *Id.* at 12:23. On November 9, 2007, the court sentenced Petitioner in accordance with the plea agreement. Transcript of Sentence, Re 3 at 22:1-14; Re 4.

Petitioner appealed his conviction to the New Jersey Superior Court, Appellate Division. Petitioner sought relief on

---

[2] The transcript of the plea hearing spans two docket entries. The Court will refer to the page numbers of the transcript as though it were one document.

three separate grounds: 1) "Because the statement that the Defendant made to the Police was not knowingly, intelligently, and voluntarily made, the trial court's refusal to grant this motion suppress the statement deprived him of due process of law and violated his privilege against self-incrimination"; 2) "The Defendant's plea of guilty to the charge of manslaughter failed to contain a sufficient factual basis and must be vacated", and; 3) "Defendant's sentence is excessive and must be reduced or remanded for sentencing." Appellate Brief, Re 5 at 3.

The Appellate Division affirmed the denial of the motion to suppress but vacated the guilty plea to the reckless manslaughter charge. It concluded that the trial court had not established a sufficient factual basis for the "awareness" element of the manslaughter charge: "At the plea hearing, Campfield was not asked whether he appreciated that there was a risk, even a 'mere possibility,' that Bennett might die after he ran out into the woods under the circumstances then existing." *State v. Campfield*, No. 5618-07 (N.J. Super. Ct. App. Div. June 28, 2011) slip op., Re 7 at 32. It remanded to the trial court with the instruction that the charges that had been dismissed as part of the plea agreement should not be reinstated. *Id.* at 35. The State petitioned the Supreme Court of New Jersey for certification on the issue of "[w]hether the Appellate Division erred in fiding that there was not an adequate factual basis for

6

the guilty plea" and whether it erred by precluding the reinstatement of the other charges. Re 8 at 11. Petitioner cross-petitioned for review of the decision affirming the denial of his motion to suppress. Re 9. The Supreme Court granted the State's petition, *State v. Campfield*, 32 A.2d 600 (N.J. 2011); Re 12, and denied Petitioner's cross-petition, *State v. Campfield*, 39 A.2d 199 (N.J. 2012), *corrected by* 42 A.2d 889 (N.J. 2012); Re 13. The Supreme Court found that a sufficient factual basis had been established and reversed the Appellate Division. *State v. Campfield*, 61 A.3d 1258 (N.J. 2013); Re 14. Petitioner filed a motion for post-conviction relief ("PCR") on February 5, 2013, Re 15, but voluntarily withdrew the petition on March 25, 2013, Re 16.

   Petitioner filed this timely § 2254 petition on April 17, 2013. By Order dated April 29, 2013, this Court informed Petitioner of his rights under *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), and ordered him to advise the Court as to how he wished to proceed. *Mason* Order, Docket Entry 2. Petitioner acknowledged receipt of the order and elected to "proceed forth, the Petition raising the one ground to be considered as [his] one and complete petition." *Mason* Response, Docket Entry 3. Respondents filed their answer to the petition on June 19, 2013, Docket Entry 9, and Petitioner submitted a traverse on July 30, 2013, Docket Entry 10.

## III. STANDARD OF REVIEW

Title 28 U.S.C. § 2254 permits a federal court to entertain a petition for writ of habeas custody on behalf of a person in state custody, pursuant to the judgment of a state court, "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits by a state court, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[A] state-court decision is an unreasonable application of clearly established [Supreme Court] precedent if it correctly

identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 134 S. Ct. 1697, 1706, *reh'g denied*, 134 S. Ct. 2835 (2014). The Court must presume that the state court's factual findings are correct unless Petitioner has rebutted the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**IV. ANALYSIS**

Petitioner raises one ground for relief in his petition:[3] "Conviction obtained by plea of guilty to the charge of reckless manslaughter failed to contain a sufficient factual basis." Petition ¶ 12. He argues:

> During the plea colloquy, I never made the admission to possessing the awareness that the victim would somehow die and I was never given the opportunity to establish my state of mind on the record. The thought that there was even a mere possibility the victim would die, was never once entertained in my mind. I always believed the death to be accidental and never knew the charge of reckless manslaughter would be contrary to the facts.

---

[3] Petitioner argues in his traverse that the reinstatement of his conviction by the New Jersey Supreme Court violated the Double Jeopardy Clause. As noted in this Court's *Mason* Order, prisoners challenging their state court convictions must include all available federal grounds in their petition. *Mason* Order ¶ 3. Petitioner acknowledged receipt of the order and elected to "proceed forth, the Petition raising the *one* ground to be considered as my one and complete petition." *Mason* Response. Petitioner's Double Jeopardy argument was not in his petition, therefore it is deemed waived. Moreover, this argument was never presented to the state courts, thereby precluding federal review.

*Id.* Respondent asserts Petitioner failed to exhaust his state court remedies as he withdrew his PCR petition, and that there is no federal constitutional requirement that a guilty plea needs to be supported by a factual basis.

**A. Exhaustion**

"A federal court will not grant a state prisoner's petition for a writ of habeas corpus unless available state-court remedies on the federal constitutional claim have been exhausted. The exhaustion requirement is satisfied only if the petitioner can show that he fairly presented the federal claim at each level of the established state-court system for review." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004) (internal citations omitted). "To 'fairly present' a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). The Court finds that Petitioner fairly presented his federal claim to the New Jersey courts on direct appeal.

Petitioner argued before the Appellate Division and New Jersey Supreme Court that the factual basis of his plea was insufficient, specifically citing the Fourteenth Amendment in his appellate brief as a basis of his claim. Petitioner's Appellate Brief at 50. Petitioner also cited *Boykin v. Alabama*,

10

which began a line of cases standing for the proposition that due process requires that a defendant understand "the nature of the charges" and "the acts sufficient to constitute the offenses for which he is charged" before he can knowingly, intelligently, and voluntarily waive his constitutional rights. 395 U.S. 238, 244 n.7 (1969) (internal citations and quotation marks omitted). The specific invocation of the Fourteenth Amendment and *Boykin* sufficiently alerted the state courts that Petitioner was asserting a federal claim in addition to his state law claim.

Even if Petitioner had not specifically invoked the Fourteenth Amendment, a federal claim may be exhausted by presenting the "'legal theory and facts underpinning the federal claim'" in the state courts so long as "'the same method of legal analysis [is] available to the state court as will be employed in federal court.'" *Gattis v. Snyder*, 278 F.3d 222, 231 (3d Cir. 2002) (quoting *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992)). New Jersey's Rule 3:9-2 requires the trial court to determine "that there is a factual basis for the plea and that the plea is made voluntarily . . . [with] an understanding of the nature of the charge and the consequences of the plea" before it may accept a guilty plea. This comports with federal due process requirements. *See Marshall v. Lonberger*, 459 U.S. 422, 436 (1983); *Henderson v. Morgan*, 426

U.S. 637, 645 (1976); *Boykin*, 395 U.S. at 244 n.7. This claim has been fully exhausted.

**B. Merits Analysis**

Petitioner's claim was adjudicated on the merits by the New Jersey Supreme Court, therefore Petitioner may only obtain habeas relief "only if the state court decision was (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Grant v. Lockett*, 709 F.3d 224, 231 (3d Cir. 2013) (quoting 28 U.S.C. § 2254(d)).

At the time of Petitioner's guilty plea, it was firmly established by the United States Supreme Court "that a plea of guilty cannot be voluntary in the sense that it constitutes an intelligent admission that the accused committed the offense unless the accused has received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Marshall*, 459 U.S. at 436 (quoting *Henderson*, 426 U.S. at 645); *see also Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) ("Where a defendant pleads guilty to a crime without having been informed of the crime's elements, this [voluntary, knowing, and intelligent waiver] standard is not met and the plea is invalid.").

*Henderson* and *Bradshaw* are particularly relevant to the present inquiry. In *Henderson*, the Court held that a defendant who was not informed prior to pleading guilty that intent to cause death was an element of second-degree murder, and who testified that he would not have pled guilty had he known of that requirement, did not knowingly, intelligently, and voluntarily waive his constitutional rights. As a result, his guilty plea was involuntary under the Due Process Clause. *Id.* at 643-46. In *Bradshaw*, however, the Supreme Court clarified that "the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." 545 U.S. at 183. "Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty." *Id.; cf. Henderson*, 426 U.S. at 647 (distinguishing result from cases in which "the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused").

The case at bar is more like *Bradshaw* than *Henderson* as the state court record indicates Petitioner's trial counsel, whose

13

competence Petitioner does not challenge, reviewed the nature of the charges with him prior to the plea hearing. Counsel informed the court at the time of Petitioner's plea that he had "gone over the entire plea form with my client together with the supplemental plea form regarding No Early Release Act cases. He answered all questions which have been placed on the form. He provided me with appropriate answers, Your Honor. I believe he understood the nature of the questions." Plea Transcript at 3:19-24. The questions answered by Petitioner include: "Do you understand what the charges mean?" Petitioner's Appellate Brief at 85. Petitioner circled "Yes." *Id.* Moreover, Petitioner testified under oath that he had reviewed the charges with counsel and understood them:

> Court: First of all, it is said in the plea agreement that you're pleading guilty to the charges of manslaughter and robbery, counts 5 and 2 of the indictment, is that correct?
>
> Petitioner: Yes, Your Honor.
>
> Court: *You've gone over what these charges mean. You believe you understand what they mean?*
>
> Petitioner: *Yes, Your Honor.*
>
> . . . .
>
> Court: [] Mr. Campfield, I'm holding up several forms. They include the plea form, the notice of the No Early Release Act form. . . . They appear to bear your initials and signature. Are they yours?

14

> Petitioner:  Yes, Your Honor.
>
> Court:  *Did you go over all of the questions and answer with [counsel] before you initialed and signed this document?*
>
> Petitioner:  *Yes, Your Honor.*
>
> Court:  Do you believe that you've answered all the questions truthfully?
>
> Petitioner:  Yes.
>
> Court:  Do you have any questions at all for me, your attorney, the Prosecutor, about what you're doing today or what the consequences, that is what result there will be from your guilty plea today? Any questions at all?
>
> Petitioner:  Do I have any questions?
>
> Court:  Yes.
>
> Petitioner:  No. No, Your Honor.

Plea Transcript at 4:23 to 5:5, 8:24 to 9:18 (emphasis added).

Although Petitioner was not specifically asked about his state of mind, Petitioner "admitted his awareness of several facts that exacerbated the risk that Bennett would die as a result of his conduct, and that those facts were relevant to both mens rea and causation." *State v. Campfield*, 61 A.3d 1258, 1269 (2013); Plea Transcript at 10:6 to 11:23. Petitioner admitted that "he punched his intoxicated and incoherent victim, attempted to rob him, forced him to remove his clothing on a cold January night, and chased him into a wooded area, where he

15

died." *Campfield*, 61 A.3d at 1261. He agreed these actions were reckless and that his reckless actions contributed to Bennett's death. *Id.;* Plea Transcript at 11:24 to 12:6. Moreover, both Petitioner and counsel represented to the trial court that they had discussed the charges and that Petitioner understood the charges to which he was pleading guilty.

In light of these facts, the New Jersey Supreme Court's decision is not contrary to, or involve an unreasonable application of, *Henderson* and *Bradshaw*, nor were its factual determinations unsupported by the record. Petitioner has therefore failed to demonstrate a violation of the Due Process Clause, and he is not entitled to habeas relief.

## C. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

For the reasons expressed above, Petitioner has failed to make a substantial showing that he was denied a constitutional right. As jurists of reason could not disagree with this Court's resolution of his claims, the Court shall deny Petitioner a certificate of appealability.

## V. CONCLUSION

For the reasons stated above, the habeas petition is denied. A certificate of appealability shall not issue. An accompanying Order will be entered.


 **June 23, 2016**           **s/ Jerome B. Simandle**
Date          JEROME B. SIMANDLE
         Chief U.S. District Judge